We'll hear argument next in Case 12-1497, Kellogg Brown & Root Services v. United States, ex rel., Benjamin Carter. Mr. Elwood. Mr. Chief Justice, and may it please the Court, by clearing the way for a relator to file a fifth identical false claims act complaint against KBR, raising allegations the government had long known from other sources, the Court below erred in two respects. First, the plain text and history of the Wartime Suspension of Limitations Act confirmed that it applies exclusively to crimes. The language of the provision tolls limitations periods for offenses. On the very day that that provision went into effect, a neighboring provision or a nearby provision of Title 18 divided offenses into two categories, felonies and misdemeanors, both plainly applying to crimes. A neighboring provision also of Title 18 divided offenses between capital offenses and non-capital offenses, again referring solely to crimes. And it is very telling that in 857 dual-column pages of Title 18, neither the government nor a relator has been able to identify any provision that uses the word offense to refer to a civil violation. Is it unusual that a criminal statute of limitations would be much longer than a civil statute of limitations, which is the effect of your argument? I don't think it is necessarily. I mean, it depends on what exactly Congress is trying to attempt. And it reflects some of the differences between how criminal law is prosecuted and civil law is prosecuted. Because recall that Congress did – it has its separate provision for recognizing that the False Claims Act may be hard to investigate at times, and it provided a discovery mechanism there that doesn't apply to relators. It only applies to the government, a 3-year discovery period with a 10-year backstop. I think some States used to have no statute for murder, and yet had a statute of limitations on wrongful death claims. I think that's the case, with respect to State law, anyway. But I think it all kind of reflects the kind of differences between criminal law and civil law, because the minute a complaint is filed, I mean, most of the investigation, especially for relators, they don't have any legal status to conduct investigations. They don't – they can't bring subpoenas. So usually it's based on their own knowledge. They file a complaint, they come into court, and then they have the Federal rules. Also at that point, the government gets a 60-day period to investigate, which is on average 13 months, according to the Chamber of Commerce brief. It cites a letter from the DOJ to the Senate. And in our own experience, and in this case, it's usually a couple of years. And during that time, they have, you know, all the time they want to investigate. So I think it just reflects the fact that criminal litigation and civil litigation are conducted differently. But clearly, Congress already contemplated how to handle delays under the False Claims Act, and they enacted a civil provision for that under the FCA. And so I don't think the Court needs to import this general provision, which applies only to offenses, to address the False Claims Act situation that Congress has already specifically addressed. Now, all parties agree that the Wartime Suspension Act began its life as a criminal provision, an exclusively and explicitly criminal provision. The only question is whether Congress changed it along the way to make it civil. The thing that the relators point to is the deletion in 1944 of the words, now indictable. But that went unremarked in Congress, and you would expect somebody to say something if they were fundamentally transforming the nature of the statute. And that's not what people understood those words, now indictable, to mean at that time. If you look at the other things that were around it at the time, like, for example, 47 days after the first Wartime Suspension Act was enacted, Congress, for crimes — and all agree it was for crimes — they also enacted an antitrust suspension act, which didn't use the word offenses. It used the word violations. And it said, now indictable or subject to civil proceedings, which shows that what was going on in that clause was about the now. It was to tell you that it applies to things that came before this. And the other thing is that it was about the now. Sotomayor, are you adopting the argument of the New England Foundation, the Amici brief? That is, yes. We made that argument, I think, in our brief as well, but I think that they did a more full-throated version, and also NDIA did a more full-throated version of that. But, yes, I think that it was — the purpose of that was to say it was applied to things before the date of enactment and hadn't yet been barred. And that was one of the other things. I mean, if you look at what this Court said about that language of McIlvain, it said that that was to say that the statute of limitations hadn't run, that that's what that now indictable language did. This Court's McIlvain opinion is a little different. Kagan.  Kagan. Kagan. But Mr. Elwood, I take the point, and that seems like a fair understanding of why that term came out, but it wasn't the only change that they made at that point, and taking that term out may have had more than one reason, of course. So, two other changes they make are they put in the word any. They put it in conjunction with this Contract Settlement Act, which presumably refers both to civil and to criminal matters, and it follows right after this Contract Settlement Act and suggests that it's following on it. So, you know, put all those three things together, the taking out of the indictment language, the putting in the word any, and the passage in conjunction with the Contract Settlement Act, I think that that would be an argument on the other side. I'll try to address each of those. I have a pretty terrible memory, so just bring me back to it if I forget. I think now indictable is just to make it forward-facing, because they were now not worrying about just those cases. They wanted to make it forward-looking for the rest of the war. With respect to any offenses, it wasn't just any offense that's implicit, or it was any offenses against the laws of the United States. And Congress thought that was so unequivocally applied to criminal law that that is the exact phrase they used in enacting the statute giving district courts exclusive jurisdiction over crimes. They didn't say crimes. They said offenses against the laws of the United States in 1948. And what was the third? And I told you it was a terrible memory. Pardon me? Contract Settlement Act. Oh, and the Contract Settlement Act. I mean, they say it was a, you know, predominantly a civil statute, and they did create a big administrative state or an administrative apparatus. But the provisions that they — the causes of action they created are actually — the primary ones it created were not actually subject to a statute of limitation, so it would have been curious to try to toll them. For example, the thing — and this Court said in Kohler that 26b-1 of the — of the Surplus Property Act wasn't subject to any statute of limitations. There was an analogous provision in that, 19c, which is the one that Bolayder and the government both pick out and say, aha, look at this, a new civil cause of action. They were probably trying to toll that. But as the Solicitor General said in footnote 3 of their Kohler brief to this Court, the remedy in that is substantially like the remedy in 20b — 26b-1, with the suggestion being that it was not itself subject to a statute of limitations, which is what the district courts that have addressed 19c have said, that it wasn't subject to a statute of limitations. As the — as his brief points out, the court of claims applied a statute of limitations to both 26b-1, which this Court overruled, and to 19c. But I think that the district courts had a better — had the better of that argument. But the overall impression is it was still, at the end of the day, it was still applying to offenses, that is, crimes. Ginsburg. And that goes for the government as — I mean, suppose the government, not a relator, brings a false claims case against the contractor. The government wouldn't get the ability — the — under your view, the government doesn't get the suspension. That's right. It doesn't get the wartime suspension. It would, however, get the specific 3-year tolling provision or 3-year discovery period under the False Claims Act itself. And a couple other notes that I think are worthwhile. We've already said a lot about the fact that the Solicitor General said in 1959, at a time when it had been litigating these cases continuously, that it was subject to criminal laws only. But I think it's also significant that the officer created by the Contract Settlement Act or the Office of Contract Settlements said in 1947 that this tolling provision only applied to crimes. And I think that's significant because, I mean, it was within — I'm not saying it's a Chevron deference thing, but it was within their duty, as the government points out, they had to investigate and report it to the government to do what they will with it. But the end result of it was that you have to know whether that's subject to tolling or not when you're deciding how to prioritize what you're going to be investigating and reporting. I think one final thing, and then I'll move on to the other element or the other error that the Court made, was that neighboring provisions in Title 18 simply wouldn't make sense if offense also applied to violations of the civil laws. Like, for example, 3282A, it says no person may be tried for an offense unless indicted within five years when the offense arose. And obviously, you can be tried for a civil crime without being indicted within five years. And under Cowart v. Nichols, that is, you know, something the Court takes into consideration in trying to determine the meaning of something. Now, even though it would be mostly a complete remedy if we won on the wartime suspension grounds, if the Court also gets to the first to file issue, it could save the easy way. Sotomayor, and we in any way? As soon as we agree with you on the first question. Yeah, as soon as you agree with me on the first question. Should we — A, should we get to the second? Then how would we if we believe if you were right on the first? Well, you should because, among other things, it will take care of on remand. The Court won't have to address the equitable tolling argument that we think is waived and also meritless. And also, of course, there is the same issue already behind this in the Purdue Pharma case and in the Shea case as well. And so I think the Court may as well. It would be the most efficient thing to do. But I think it will be — it would be a complete remedy on us if we won on the wartime suspension grounds. Now, the second error that the Court below made was to — well, if Congress had meant the first-to-file bar to be a one-case-at-a-time rule, allowing, you know, an unending or infinite series of related lawsuits, it would have said so in plain terms. The only — the problem you have with this argument, and it has substantial force to it, but you give no significance to the word pending. You almost write that out of the statute. I don't — I disagree, Justice Kennedy, because, I mean, you have to have some sort of word there, because otherwise it would be kind of confusing between the two — between the two actions. How about former? Well, there are a lot of ways. Pending is a very strange word to pick. Or first. But the thing is — well, let me begin by saying that under — Or said action or that action. Yeah, but I think under each of the parties here, it could have been written better to follow up, you know, what — to embody the reading that we want to give it. But I think that ours is the one that makes the most sense, because if you just look at the provision from the moment when the bar arises, it makes perfect sense. It is the pending action at that point. And in order to — Well, but aren't you on to — besides the problem that you're talking — you're not giving pending any meaning, you're also destroying the force of an original source. I mean, the public disclosure bar doesn't apply to an original source, and you're sort of blocking original sources from bringing suits when a prior case involved a dismissal for a technicality or a dismissal because this was in the public domain. But that's not true for an original source. Right. But I think to begin with, there's nothing in the public disclosure bar that suggests that it was supposed to prevent the original source from being subject to all of the other bars that are out there still, like the — you know, like the government knowledge bar that still exists in a tiny little corner, or the first-to-file bar. And the original source makes a lot of sense for public disclosure, but it doesn't make any sense for first-to-file for this reason. When it's public disclosure, when it's something that's said in a committee report, you have no idea whether or not it got into the ear of the person at the Justice Department who needs to know about it for something to be done about it. In first-to-file, however, they not only — they have to file an action in district court, and they have to give all the material evidence they have to the Attorney General of the United States, who is under a statutory obligation to investigate it, and who has to decide whether to intervene or not. Now, that is something that guarantees that, you know, by hook or by crook, somebody at Justice Department with responsibility for these things knows it and has the information they need to take action on this. And after you've done that once, it doesn't make a lot of sense for you to be able to just keep coming into court and filing a lawsuit, telling the government, hey, you know that stuff that you already know? Let me tell it to you again, and I want to pound you on that. Sotomayor Well, the reality is you don't need a quid tan unless the government doesn't want to waste resources on something, but that doesn't mean that they didn't find that there might be something there. But once the – I mean, once the government has – once the original first-to-file bar, once the original relator reports this information to the government, if the other actions that are to be barred are related, the government has the information it needs to investigate all of them. But what this does is it's not going to be a case of, well, you know, you know, I don't know. Sotomayor You have to assume that what the intent is, is not to force the government to investigate and to prosecute, but to get recovery for the – for the government. I think it is the point of the first-to-file bar is to do two things, and this is kind of widely accepted, that, first, it is to give incentives for people to come forward. And I think that basically requiring it to stop at one is a much more powerful incentive to come forward promptly with the information you have. And secondly, it is to make sure that the government doesn't dilute its recoveries by paying subsequent relators for information the government already has. And if the first relator gave you enough information to investigate the whole breadth of the crime, you won't have to pay that initial relator, you know, depending on whether – I guess if you intervene by presumption, it would be 15 to 25 percent. But if that person can file and the next person can file and the next person can file, as long as there's a break in the traffic. Sotomayor, I don't know if General Estoppel works in this area. I actually don't know, but let's assume that you're – that the adversary won a claim against you. Could someone else come in and you've now won for the government, essentially? Could anyone else file a suit, or would they be stopped because – Well, at that point, it would be already – I mean, I guess it would depend on the scope and how related – you're talking about KBR loss in this hypothetical case, correct? Exactly. Because there, the mutuality, I mean, it gives more – you know, because there had already been a finding that KBR had done certain things, that might apply to other relators. But I think the thing that kind of matters more is what about the nonmutuality in the other direction? Because if KBR beats Relator No. 1 and they say there was no problem here, what about Relator 2 through X? The relator is treated as the government for – for preclusion purposes. Well, that was at least – at least so, Judge Eckerberg. I don't think that it's clear that that's the case. Although there is good authority, at least in the court of appeals, for that position. I disagree, Justice Ginsburg. We've been looking for it, and we have not found anything that clearly says Relator 2 is bound by Relator 1, having loss in an action. There is the language, which I think is dictated in Eisenstein, to say that the United States itself is barred. But I think that any – any defendant is going to have to establish that law anew if it's going to apply to further relators down the road. But is it your – is it your position, suit No. 1 is filed, it's dismissed within weeks without prejudice. No other relator can file it? It depends on what the basis of the dismissal was. Because if it was dismissed on 9b grounds, routinely they can amend. And it's not dismissing the whole action. It's just dismissing that complaint, and they can come right back in with an amended complaint. And that is the same action. Ginsburg's question is whether somebody else could come in. You say you have somebody who's the first filer and comes in with a sloppy complaint and it's not stated with sufficient specificity, dismissed, and that person goes away. You're saying nobody else can ever come in. No. I think it's the protection there comes from the word related. Because courts of appeals apply a same-material facts test. If you come in with a sloppy mess of a complaint that doesn't allege, it just says KBR is valid, but it's not. Well, it was a perfect complaint, but he sued in the wrong court, or there was no personal jurisdiction. Well – Dismissed without – dismissed without prejudice. I mean, if it's in the wrong jurisdiction, you can transfer it. I mean, that's a very hard thing to say, because it's an 8-1-1 process. No, the hypothetical is dismissed without prejudice, but it's a beautifully drawn complaint. Well, I'm going to resist – I'm going to resist for a little while before we get to the meat of the issue, just to say that it's not going to happen, because personal jurisdiction has nationwide service of process, and so it's very hard to invoke a personal jurisdiction. It's dismissed for failure to prosecute. Well, if it's for – On non-merits ground, and so nobody else can – Yeah. If it's dismissed for failure to prosecute, well, first of all, let me resist the hypothetical a little bit more. If it's under our rule, that's an incredibly valuable lawsuit, because there are no more mulligans, and so there will be somebody who comes in there and is willing to underwrite it, a new set of lawyers who will be willing to take the case. But if it is, I think that we would say it has been barred. If somebody came forward and provided all material information, then everything that is related to that would be barred. I'd like to get back to Justice Ginsburg's hypothetical, because it's an important one, and that is, if somebody files – the relator says, oh, well, somebody files a terrible complaint, it's going to bar all the good ones, and I don't think that's the case, because they're going to compare under that test, the same material facts test, you compare. And if this one just says KBR is bad, they commit a lot of fraud, and this one says that these three camps, they were requiring people to bill 12 hours a day, 84 hours a week, regardless of how much they worked, those aren't the same material facts, and you get the protection that way. I thought the first-filer rule was meant to protect the first-filer in that, well, one aspect of it is the first-filer doesn't have to worry about a race to judgment. Somebody else files second and gets the judgment first. So I thought that that was one of the chief aims, was to protect the first-filer and also to protect that filer's recovery, so he doesn't have to split up whatever the two camps claim to protect. The phrase, race to judgment, is not anything that I have found in the courts of appeals. I've only found it in the government's brief. I think that the Court says that the incentive they wanted to create, the first-filer was meant to create a race to the courthouse, not a race to judgment. And with the first-filer is a race to the courthouse. Yes, it's meant to create a race to the courthouse. And there's less of an incentive to race to the courthouse under the relator's rule, because even if you aren't the first to file, you can still bring a claim. You just got to wait for a break in the traffic to jump in. And I'm under that. If you are the first to file, you don't even get a better settlement, because when — you know, most of these cases are settled. They aren't litigated to judgment. And a defendant is not going to give you, you know, everything you're asking for if they know that they're going to have to settle this case again and again and again. And, in fact, it discourages settlements because you would be a fool to settle it right away because it just means more people are going to be able to sue you. The relator's rule is as many lawsuits as you can fit into 6 years or 10 years or an infinite period of time because, you know, there's nothing particular to stop them. Whereas under our rule, you have much more of an incentive to settle and settle for the full amount, because by settling with that first relator, you are buying peace with respect to all related lawsuits. Ginsburg. Do we know in this case there were three suits? Thorpe, I think, was the first. Do we know why those suits dropped out? The first one was just dismissed. The lawyers dropped out, and they couldn't — or they didn't find other lawyers. The first Carter suit. No, I'm sorry. The first Thorpe lawsuit, the first related lawsuits, was just dropped for failure to prosecute when lawyers — new lawyers didn't step in to take over the old ones. So you said that chose it for everybody else. Right. Right. And that's the reason why I'm saying that they made the full disclosure, the government investigated that case, and they knew the 12-hour-a-day, 84-hour-a-week claim, and they were able to investigate it. And if they had wanted to bring it, they could have brought it and recovered the whole thing and only paid the Thorpe relators. And I don't know why the other ones dropped out. But they were voluntarily dismissed, I believe, all of them. And as I said, I think this is the more natural — Pardon me? Were any of them filed by original sources? I think — I think all of them were original sources. They were all people who would have qualified as original sources and — under the — under the statute. And as I say, I think that this is the more reasonable reading of it, because if you look at this from the point of view of when the bar arises, when it is the pending action, it does everything, no word of surplusage, everything fits. But I have yet to see a one-case-at-a-time rule that works the way that this statute does, that uses just an adjective, which — I mean, if you look at it, it's an adjective that is only describing what is a related case. And usually — It's not a pending action later. I mean, when that action has been dismissed or been completed, you say that a later action is prohibited even though there is no pending action, right? But that's — that's because I think that if you — as I say, if you look at this from the point of view of when the action is filed, it makes complete sense and it is a pending action. And I — there's a reason for doing that. If you look at pages 8A to 9A, this is the mirror image. The language used in B-5 is the mirror image of the language used to create the cause of action in B-1. It says in B-1, a person may bring a civil action for a violation of Section 3729. And then you find out what happens when they do that, and the bar arises, 5. When a person brings an action under this subsection for that violation of 3729, no person other than the government may bring a related action. So it's a — it's a parallelism between a person may bring and no person may bring, which suggests that you look at it then going forward. And looking forward indefinitely, just as B-1, you look forward for 6 years or 10 years or if there's no statute of limitations, forever. And by the same token, I think 5 is a looking forward provision, that the bar arises and that's it, no person may bring. And when you contrast that to saying that this is a temporal limitation, you — you know, I — I defy you to find another provision that uses just the word pending with no verb, no nothing, to give it some sort of effect like that. You know, we cite a couple of — Breyer. Since you're getting into that again, I mean, to me it makes perfect sense to apply it just to the pending action. The action goes away. Number two person, and that means there isn't going to be the problem that Justice Ginsburg suggested, so we don't have that problem. And now we have a new person who can bring a suit if and only if he's the original source. Well, if he's the original source, let him recover. Why not? And your answer to that is, well, he didn't tell the government all the stuff the first guy did. Well, so yeah, but that's not the only purpose of suite action. It has other purposes. It's to reward the person who, in fact, did discover this thing and — and made every effort to bring it to public attention. But there's nothing in the first-to-file bar that says anything about an original source. Original source is a carve-out for the public disclosure bar. I know, but he can't — but other things prevent him from bringing it unless he's the original source. Am I not right? I mean, it's all been disclosed, you know. Everything's been disclosed. Well, it may or may not have been, because frequently it may or may not have been because somebody's taken on the deal. Let's take a mind run. Right. Right. I don't want to interrupt. I don't want to interrupt. You're reserving your time.  I would like to reserve the remainder of my time for rebuttal, please. Thank you, counsel. Mr. Stone. Mr. Chief Justice, and may it please the Court, this civil FCA war fraud case is told under the plain language of the WSLA because it is an offense involving fraud against the United States under subsection 1 and is also an offense committed in connection with the payment or performance of a war contract under subsection 3. If we look at — if we look at the text of the law which applies here, which is at our appendix at page 1, there is nothing in that text which limits — which limits offenses to criminal offenses. Not a single word in that text. It's based in the criminal code. It's based in Title — That's true. That's true, Justice Ginsburg. But as the government has identified, I believe it's in note 3 of their brief, there are at least seven civil offenses in the criminal code, including RICO, civil RICO. And, in fact, I would — I would direct the Court to section 1034, which says specifically the attorney general may bring a civil action in the appropriate United States district court against any person who engages in conduct constituting an offense under section 1033 upon proof of such conduct by preponderance of the evidence. That is a civil offense. That is not a criminal offense. And I believe if you look — if the justices, if you look at the — Is there any civil offense in Title 18? Yes. I just — I just listed one. That's in 18. That's Title 18, section 1034. They're in — Is that about fraud? That's about fraud, yes. And what is the word offense? What does the word offense mean in that provision? The word offense is this Court — In that provision. What is the word offense? The word offense means a transgression of law, which may be — It means a criminal offense, right? I disagree, Your Honor. I believe offense — It wouldn't make any sense in Title 18 unless the offense they're referring to is one of — one of the criminal offenses of Title 18. I don't agree, Justice Scalia, because — Read the provision again, would you? Certainly. The attorney general may bring a civil action in the appropriate United States district court against any person who engages in conduct constituting an offense under section 1033 and upon proof of such conduct by a preponderance of the evidence. That is the civil or federal provision. 1033 is the way a number of the provisions in the criminal code are written. The offenses or the conduct which is punishable are in subsection P. I think the point that people are trying to make is perhaps is that that provision you read provides for a civil action by the attorney general against a person who has committed an offense. What offense? An offense elsewhere defined in 18. Is that offense defined elsewhere criminal or civil? It is criminal. That's the point, I think. And I disagree, Justice Breyer. I know you disagree, but let's turn to the other offense of cross-references and why don't you read that. If we read the language carefully, which I have done. I've got the language of that one. If we read the language of a number of the statutes, a number of the statutes in Title 18, they have punishments that are criminal. Everything in Title 18 has punishments that are criminal. But there are a number of statutes within Title 18 that also have civil remedies or create civil private rights of action. Nobody believes by using the term offense that Congress intended to turn those  That's not true. Breyer, I agree with the word offense appears and it provides for a civil action. What I wonder is when you turn to the particular provisions that do that and look at the word offense, is that word offense in those civil remedy provisions referring to a civil or criminal behavior? It is referring to civil, you say. So let's read it. It is referring to conduct which can constitute a crime, which is punishable by criminal punishment, but is also punishable by civil, by civil remedies. And the offense refers to the civil behavior. Yes, because there's things that are criminal. Okay. Good. Read me the example because I must have missed it. Because it says it must be proved by a preponderance of the evidence, which means it's not proved by, you know, beyond a reasonable doubt. So it can't be a crime. It has to be a civil offense. And that language appears in a number of places in Title 18. But may I? Mr. Sorenson, don't take this for more than it's worth, because I think there are plenty of arguments against you. But I'm actually not sure I understand this one. I mean, it seems to me if your view is it applies to both criminal and civil offenses. Right. Well, Congress had to put the thing someplace. Exactly. It could have put it in the criminal code or it could have put it with all the other civil provisions. In fact, either way there would be kind of a mismatch. And presumably this started out as criminal and it refers largely to criminal. Right. And so that's where it goes. Right. And there's no dispute that there was a limitation in 1921 and in 1942 on the statute because it said now indictable. It said now indictable, so that referred to criminal. Well, they took that limitation out, as I believe one of the justices made the point earlier, not only did they take out that limitation, so there's no limitation on the word offense, they added the word any, which this Court has held in Gonzales should be read broadly, any offense. And this Court has said both in Moore, this Court said that an offense is an infraction of the law which may be punishable either civilly or criminally. And again, this Court said in National Gypsum that Congress knows the difference between the elements of a criminal offense and a civil offense. So obviously offense can be civil. It is a textually permissible reading of this text that offense can be civil. What is your answer to the argument that this would be a big change if it previously applied only to crimes and then, according to you, it was changed so that it applied to civil claims as well? That would be a big change. What is your response to the argument that we might find a little bit of evidence here or there that that's what was intended, but Mr. Elwood says there's nothing? There's much evidence, Justice Alito. First of all, this was historically, you have to look at when this statute was being passed. In 1942, they were concerned about, they were in the middle of a war that was consuming the entire nation. In 1944, they were concerned with wrapping up that war. They were passing Contract Settlement Act, primarily a civil act. This was passed. This amendment was passed as part of the Contract Settlements Act. They were passing the Surplus Property Act. How are we going to deal with all this property? They created civil offenses for surplus property. They did say this same Congress, the 1944 Congress, said in a report that this will allow, because the bulk of the offenses under this Act will not be cognizable and investigated until after the war, this will allow for that, for litigation to occur. So they used the term litigation, again suggesting that's not a term you normally use when you're talking about crimes. They used that term. So they clearly. That's your best evidence that there was a reference to litigation? That's the best reference, because there's not, there's virtually. Where did that appear? That appeared in a Senate report when they passed the Surplus Property Act. But I think you need to look at the historical reference of when this was occurring. This was occurring when they were creating all these civil remedies. It made sense for them to expand. They added the word any to offense. They had no need to add the word any to offense. They did that because they wanted to make it clear that it could have covered any offense, including civil or criminal offenses, and they took out, and I agree there could be more than one reason why you take this language out, but they took out the now-indictable language, which was the only limitation that could be read in the text that would limit it to crimes, and there's nothing in the text as it now occurs. I would also point out that the 2008 Congress, when they strengthened this, obviously believing that the Wartime Suspensions Limitation Act should continue to be enforced, mentioned twice litigation. They mentioned the fact that this was in order to allow courts, prosecutors, and litigants to know when the statute was in effect. What Congress was that? The 2008 Congress. And that's, where does that appear? That appears in a Senate report as well. Two Senate committees or just one Senate committee? One Senate committee report. One Senate committee. And that's the Congress. Cited in our red book. Yes. Yes, Your Honor. I would point out, though, that the meaning of offense in 1921 and the meaning of offense in 1942 was a transgression of law, as this Court said, in Moore v. Illinois. It's a transgression of law which could be punished civilly. It could be punished criminally. We need more context. We need something in the statute to limit it. There's nothing in the statute. And it makes sense that Congress wouldn't have wanted to limit it because they would have wanted to give the government the option of pursuing a criminal limit. I mean, all that's true, except when you're dealing with an old statute that used to be clearly criminal. And it seems to me at that point the burden, when that statute is extended, the burden is on you to show that it's been changed from the criminal to the civil. Well, Judge, I would point out. To include the civil. And, you know, that's a different burden from what you expect. Justice Scalia, I would point out that nine of ten courts that considered this in the aftermath of the 1944 amendment held that it did apply civilly, and five of those were false claims, Civil False Claims Act cases. And those courts and that judicial precedent was in place for 40 years. Congress never changed that language, never went back. They could easily have written the word criminal in in 1944. They chose not to do that. And they could have written it in in 2000. Were they district courts, four district courts? Is that it? They were district courts. And did Congress know about those? Congress is presumed to know about them. Oh. But I would also point out that the people in the courts that were operating at the time that this amendment was made understood it to change the law. Nine of the ten courts understood it to change the law. So it goes to what people believed at the time the meaning of that word was. Because it changed the law to do what? To allow civil counsel. So what they had done is to change the law to allow civil counsel to investigate crimes that had occurred, which was operate prospectively, not just to crimes that had already occurred. Right. That's one change. Right. That everybody agrees. Change the law to include any offense we would say that was related to the war which would include our civil FCA war fraud offense in this case. It's specifically consistent with Congress's intent that a fraud such as occurred in this case, that the government would be able to pursue it. It's a fraud on the troops in wartime. It's exactly why the statute was passed. It's exactly why the False Claims Act was passed. Ginsburg. Government can pursue it in a criminal case. The question is whether the civil. Right. And the question is whether it's appropriate. And based on the language, Justice Scalia, based on the language of this statute, which nowhere in it contains a limitation, the only limitation was taken out in 1944, and instead they added the word any, and they added two subsections that could be read. The only limitation urged is the word offense. That's the limitation that is urged, which is normally used to connote a crime. Well, the two. And I don't think that changes. The terms. If you put the word any in front of it. But, Your Honor, in Moore v. Illinois, the Court said that offense means a transgression of law that could be punished either criminally or civilly. And presumably Congress was aware of this Court's holding in Moore, or is presumed to be, and then this Court again on a number of occasions, including in National Gypsum, referred to Congress as being familiar with the difference between criminal and civil offenses. There would be no need for the term civil offense or the term criminal offense if offense meant crime. Offense doesn't mean crime. There would be no need for the word criminal offense if offense meant crime. By the way, the word criminal offense occurs a number of times. Sotomayor, everyone agrees that from 1921 on, it was understood that this was a criminal statute, and I think the point has been made before. If Congress really was going to change it, to load it all onto the excision of two words which can be explained on other grounds, it's a bit much. Wouldn't Congress have said, now we're going to make it, we want it to be civil, so we're going to make it clear that it's civil? Justice Ginsburg, I would point out a couple of things about that. First of all, the surplusage language which Petitioner points to, which they claim was the reason that this was taken out, was in the statute since 1921. So they have no historical reason why all of a sudden, in 1944, it was taken out. It was there directly the entire time. The other reason is the statute acted retrospectively for the first part of its history, and then it took it out when it was going to operate prospectively. But, Judge Ginsburg, that's not correct, because the language at the end of the Wartime Suspension of Limitations Act holds that the statute does apply retrospectively. It applies to any statute of limitation which has not yet run. And that's been in the statute since 1942. I would also point out that the 1921 statute had nothing to do with the war. There's not much we can glean from the 1921 statute. All that it did was to increase the statute of limitations from 3 years to 6 years for fraud. It didn't mention the war at all. And in 1942, all that the statute did was extend until 1945 the provision that was in 1942. It also did not refer to the war. The first statute that actually referred to the war was the 1944 statute. So, yes, it's true that some language was used, but I believe, you know, as we set forth in our brief, that offense can mean criminal or civil. It's a textually permissible interpretation. There's nothing that limits it in the current law. It's consistent with what Congress intended when they passed these statutes. And I urge the Court to seriously consider that, because it would be inappropriate for the government to be limited to pursuing cases only criminally against defendants who are war profiteers and not have that civil remedy. If I may move on to the False Claims Act. Well, you can either reserve time or move on. It's up to you. I'd like to move on, if I may. Go ahead. The False Claims Act, as Justice Scalia pointed out, pending in the False Claims Act, it's a word that was chosen in the first-to-file provision. It's a word that Congress chose to use. It makes sense, because if you look at the statutory scheme in which that provision is found, it's talking about while that action is pending, what the government can do. It talks about the previous provisions talk about the government making a decision about intervening. The next provision talks about the government can dismiss that case, which protects all the concerns that Mr. Elwood has pointed out, because the government has the ability to dismiss a case anytime that it wants to. If it isn't in the interest of the government for that case to be there. So it also uses the term intervention. You cannot intervene in a nonpending case. Congress specifically chose to put these in the same sentence, to say no person shall intervene or file a related case while the case is pending. So for that reason, I believe pending is clearly the most reasonable interpretation, but it's also the most consistent with the statutory scheme, which, as Justice Kagan pointed out, provides that original sources can go forward, even if the government has knowledge of a fraud and even if the government is investigating that fraud, as this Court found in Graham County. Ginsburg. What happens if you have a first filer, brings a claim, it's successful, either gets a judgment or gets a settlement, and the case is over, it's no longer pending? We would argue, and I believe the government will agree, that claim preclusion, res judicata, all the typical doctrines would apply. I would point the Court to Stevens, where the Court held that the relator was an assinee of the government, and if an assinee of the government brings a case and either settles it or it's decided on the merits, that would bar any future case. And I believe the government will agree with that. But to allow the defendants to say that a case that is brought that may never be pursued like in this case, Thorpe, where they alleged everywhere in the world there was fraudulent billing, this person had never been to the base where the fraudulent billing was occurring in our case, had no personal knowledge of it, no relator, other relator, was found to be an original source. They didn't reach that issue. Scalia. I'm not sure the government will agree with that, as you confidently predict, but I guess we'll ask the government. But I think the government, you're saying that if somebody brings a suit and is loses, the government is thereby precluded from joining a later suit, right? The government is. I am saying that if somebody brings a lawsuit and on the merits, there's a decision on the merits, the government has chosen not to intervene in that case. Right. They've had the opportunity to intervene at any point. But they didn't intervene. Then they are bound. Then they are bound. Okay. And furthermore. We'll see what the government thinks of that. And furthermore, I just want to make the point that Congress in the False Claims Act, I've been doing this for a while, that Congress inextricably intertwined the government and relators. You can't tear them apart because the whole point of the False Claims Act is to incentivize people with knowledge, with evidence, with witnesses to come forward. Because even if the government knows, and Congress understood this, even if the government has knowledge of a fraud, that doesn't mean they can prove the fraud. That doesn't mean that they're going to be able to find out about the fraud by investigating it. What helps them prove the fraud is somebody who has personal knowledge, an original source who can testify, here's the evidence, I saw this happen. And Congress knew that was very important. And that's why they created the original source provision and provided that original sources can pursue cases even if the government doesn't intervene. Because there may be cases where the government doesn't intervene for various reasons where it's valuable for those cases, for the taxpayers and for the government, for those cases to be pursued. Thank you, Mr. Stone. Thank you. Sorry for my confusion about the time reservation. Thank you. Why were you confused? Mr. Stewart. Mr. Chief Justice, and may it please the Court. When Congress enacted the 1942 version of the Wartime Suspension of Limitations Act, it was acting against the backdrop of this Court's 1921 decision in United States v. Hutto. And the Court in Hutto was construing the general Federal criminal conspiracy statute. And that statute made it a crime, among other things, to conspire to commit an offense against the United States. And the question before the Court was whether that criminal statute covered conspiracies to commit civil violations. And the Court held that it did. The Court held that there was no necessity in the statute for the offense, the object of which is the conspiracy, to be a criminal offense, and that the criminal statute could be violated by a conspiracy to commit a civil wrong. And there are certainly a great many provisions in Title 18 that use the word offense, in which there are other contextual clues within the provision that make clear that only crimes are covered. Is there a provision that uses the word offense, even though it may be civil? That word offense in that provision refers to something other than a criminal offense. Not other than a criminal offense. As Mr. Stone has said. Every use of the word offense in Title 18 is in reference to a criminal offense. It refers to conduct with criminal, to which criminal penalties attach. As Mr. Stone was explaining, there are provisions in Title 18 that use the word offense to describe conduct that is subject to both criminal and civil sanctions, and those are criminal offenses. The answer to my question was yes. They are still crimes, yes. Yes, okay. But what we would say about 3287 is the word offense is being used something in the same way as a hybrid. There's no dispute that the current version of the WSLA does cover crimes. It tolls the limitations period for criminal prosecutions. But it also applies to civil offenses. The next thing I would ask the Court to look at is on page 1A of the government's  statute, we've reproduced the original 1942 version of the Wartime Suspension of Limitations Act. And the provision begins, the running of any existing statute of limitations applicable to offenses involving the defrauding or attempts to defraud the United States or any agency thereof, whether by a conspiracy or not, and in any manner, and now indictable under any existing statutes. And if you look even to the rest of that provision, the only clear evidence you would find that this version of the statute was limited to crimes was the phrase, now indictable. Now, it's possible that the phrase, now indictable, did other work as well, but it was the only language in the statute that limited the provision to crimes. And so part of the question by the Court, understandably, has been to the effect of if Congress meant to change this in 1944, why didn't it do something more direct to manifest that intent? And part of our point is, in some sense, removal of now indictable is indirect, but in some sense, removing the only language that previously limited the provision to crimes is the most way, direct way to go about it. If the statute had originally been... Scalia. Well, well, well, you can say that it limited it or you can say that it showed, it showed that the word offense in that statute was being used to mean a criminal offense. Right? I don't think it could. I acknowledge that sometimes you can say offense and it means civil. Sometimes you can say that it means criminal. And sometimes you can say it means both. But what that language did in the original statute was to make it clear that the word offense in this statute was being used in a criminal sense. And I don't think that that implication is eliminated by simply taking out the, taking out the word criminal, which could have been eliminated for a very different reason, and that is to show that it operates prospectively. I guess part of the point I would make is if the initial version of the statute had referred to existing statutes of limitations on criminal offenses and Congress had then excised the word criminal, we would say, I think that would be viewed as very powerful evidence that Congress intended an expansion of the statute. But there would be no other reason for eliminating the word criminal, whereas there is a very good other reason for eliminating the phrase now indictable. Well, the reason that has been postulated is that now indictable originally served the purpose of making clear that the WSLA would not revive expired prosecutions and that this was no longer necessary in 1944 because the statute was amended to make that point clear separately. But, in fact, the 1942 version of the statute said this Act shall apply to Acts offenses or transactions where the existing statute of limitations has not yet fully run, but it shall not apply to Acts that would otherwise be barred. And yes. Counsel, is the Korean War covered by the WSLA? I think the general understanding at that time was that only declared wars were covered and so likely the Korean War would not have been covered. I don't know that there — Is that your position now, that only declared wars are covered? Well, the statute was amended in 2008 and it now provides, and the current version of the statute is at page 4A. This is current 3287. It says when the United States is at war or Congress has enacted a specific authorization for the use of the armed forces. Was there such an authorization in the Korean War? Not pursuant to — No, no. I mean at the time. I don't think there was. I don't. I'm trying to get at the question of the breadth of your position. As I understand it, you're now saying at war doesn't necessarily have to have a declared war. I think what we would say is under the current version of the — the current wording of the statute implies that at war does require a declaration of war, but Congress has added an additional category when there has been an AUMF pursuant to the War Powers Resolution. So if the current version were in effect in 1950, the Korean War would not be covered because there wasn't a declared war, and my understanding is there wasn't specific authorization for the use of force? That would be my understanding as well, that Congress seems to have acted to extend the statute beyond declared wars, but not to anything that could be considered military operations if they have not been authorized in a particular manner. Mr. Stewart, before your time runs out, what is the government's position on the point raised by counsel for Respondent? Namely, if there is a dismissal of — on the merits of a civil action, is the government barred from later bringing a different action on the same claim? Yes, we would think we would be barred. We think that was Congress's expectation in 1986, and that's the understanding of the statute that we've been operating under. That is, our protection under the statute is that when a ketam suit is filed, we have an initial opportunity to decide whether to intervene or not. Even if we initially decide not to intervene, we can move later to intervene for good cause shown, and so if we initially think the relator can do a capable job, but then we decide later, no, he can't, our protection against the claim being badly litigated is that we can take over the suit. And if we don't avail ourselves of that protection and the case is decided against us on the merits, then claim preclusion would apply. And I think in Taylor v. Sturgill, the Court identified a number of categories of cases in which nonparties can be barred in subsequent litigation. One of them is when a litigant allows his claim to be litigated by a representative. And the Court in Stevens described ketam suits as a species of representational standing. And I think the same principle would apply to a suit brought by a second relator as well. That is, an additional category of nonparty preclusion that the Court in Stevens — I'm sorry, the Court in Taylor v. Sturgill identified was that when one party is barred from litigating himself, he can't relitigate the same claim through a proxy. And if the United States would be barred by the judgment in the first ketam suit from filing its own suit, then to allow a second relator to go forward on the same claim would in essence be allowing the United States to relitigate through a proxy. And to us, it makes perfect sense that Congress drafted the first-to-file bar specifically with reference to pending actions, because we're not going to do that. Kennedy. If the case is not — the first case is not dismissed on the merits, dismissed without prejudice, and then Relator 2 files, your position is that that suit may be maintained? It would not be — our position is it would not be barred by the first-to-file provision. Now, it — the Court may want to look at — I'm curious to know, just because of background, would the first suit told statute of limitations as to the second relator? I — we believe probably not. That is, I think typically the rule is that if the first suit is ultimately dismissed, then the second suit proceeds as though nothing had happened, but that time wouldn't be told. But the Court may look at page 5A of the brief, which reproduces the current version of the public disclosure bar, and it says, this is about halfway down the page, the Court shall dismiss an action or claim under this section unless opposed by the government if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in a Federal criminal, civil, or administrative hearing in which the government or its agent is a party. So often the effect of the first suit may be to bar second relators from suing under the public disclosure bar unless they qualify as original sources. Thank you, Mr. Stewart. Mr. Elwood, you have reserved 4 minutes. Mr. Stewart said that the only language in the provision in the Wartime Suspension Limitations Act which limited it to criminal — limited it to crimes was the phrase now indictable. And I disagree with that. If you look at the Antitrust Suspension Act, which is reproduced in our brief, it said — what the Congress used said there was any violation. It's very telling that 47 days after enacting the Wartime Suspension of Limitations Act which used offense to apply only to crimes, it said any violation which is now indictable or subject to a civil proceeding. So it was the word offense there that was limiting it to crimes, not the word not — now indictable. In addition, I want to be perfectly clear about this. In page 5 of our reply brief in note 3, we go through all of the claimed criminal code provisions which supposedly use the word offense to mean a civil violation, and they do not. Every time the word offense appears, it is to describe the crime in the — in the statute, not something else. They may say the conduct underlying the offense or something like that, but every time they use the word offense, it is to refer to a crime and nothing else. Mr. Stewart also mentioned this — the Hutto case, and so this was decided against the backdrop of Hutto. I want to point out that that — the crime at issue in Hutto is the last criminal code provision which they've identified which used the word offense, they say, to include a civil violation. And the government there said that that was taken care of. It's now no longer a — no longer applies to civil violations because they — Congress amended it, 371, the conspiracy statute, to say that a minor offense is a misdemeanor. Well, that has exactly the same effect of the statute that I talked about earlier that was enforced the day this provision of the Wartime Suspension Act was enacted that says that offenses are either felonies or misdemeanors. Nobody has said a word about that yet. And it has exactly the same provision as the amendment that Mr. Stewart says overruled Hutto. Also, I think Hutto has to be viewed in light of the case it cited. A five-page opinion, it relied heavily on the 1893 case of Pettibone, which just said there can be conspiracies to violate the civilian laws. So I think Hutto is a conspiracy case and nothing more. Oh, and with respect to the res judicata, I want to point out that at this point, still no one has cited a case in which Relator 2 is bound by the loss of Relator 1. Taylor v. Sturgill talks about representative litigation, and I think that that maybe works in one direction, and that the government can be bound by Relator 1's loss. But it's hard to say that Relator 1 — I mean, at least — I would be more than happy to argue this position, but I can expect that there will be some pushback, probably including from the government at that time, if I say that Relator 2 was the representative of Relator 1 when Relator 2 was a stranger to Relator 1. Relator 2 is treated as the government's governance mispurpose. But in any event, no one has yet cited to me a case where this has already been determined, so it's all litigation risk to my client now. And finally, I want to point out one final thing, which is that Mr. Stewart said that an undeclared war under the pre-amendment Wartime Suspension Act did not apply to undeclared wars. The Fourth Circuit said differently, and the government has now confessed error, or at least said that the Fourth Circuit erred in that position. I just wanted to bring that to the Court's attention, even though it is, at most, a tertiary issue before this Court. And if there are no further questions, we'll move on to our submission. Thank you, counsel. The case is submitted.